Reese J.
delivered the opinion of the court.
The first objection taken to this decree, is, that the power to sell given to the executors in the codicil, does not embrace this land, or any land of which the testator was owner at the time of the making and publication of the will, but can embrace only lands intermediately acquired. The will which is dated on the 16th Nov. 1830, devises to his four grand ciñi-eren, Nancy R. Henderson, Mary Ann Henderson, Andrew Henderson and Caswell L. Henderson, the north east quarter of the reservation of Joseph Philips, the same where their father then lived, with the exception that their father was to have the sole use of it, during his life. Then follows this devise, “all the balance of my real and personal estate, I wish divided between my daughter Polly Wilson, my son John Henderson, my daughters Malinda Norwood and Betsey Wear, Robert N. Henderson and Sally K. Inman, an equal share each, after all my just, debts are paid/’ In the codicil dated the 29th Nov. 1830, the testator states that it is his wish that all his estate, real and personal, that is not particularly devised in his will, be immediately sold at the direction of his executors, and the moneys arising therefrom, paid over to his heirs as specified in his will.” No doubt can arise as to the objects embraced by the power. The testator in the will had particularly devised, to use his language, fifty dollars to Nancy Peck; he had also particularly devised the north east quarter of the Philips reservation, to his four grand children, with a use to their father for life. Then in a clause which as to its objects could not be more general or less particular, he devises the balance of his real and personal estate, after the payment of his debts, to the persons therein specified. The sole object of the codicil was to direct a sale of the property embraced in this residuary clause, and to divide the proceeds among the persons specified in his will, as interested under that clause, it having probably occurred to him, that the great number of the devisees might make the division of the real and personal estate among them without a sale, inconvenient, anda source of controversy.
It is objected to the decree that it is erroneous, because it *304 divests the title out of the heirs and devisees of A. Henderson -and vests it in complainant McDermott, or in other words specifically executes the contract alleged in the bill between Henderson, executor, and McDermott, which contract as appears from the statements of the bill itself, was made by a sale at auction, at a time when the land, the subject of the contracts was in the adverse possession cf Nicholas S. Peck.
We think this objection to the decree well taken; first,[because according to the principles of a court of chancery, &' trust or power to sell real estate, should not be executed, while there is á cloud over the title affecting its value, or the land is adversely held; and secondly, because the contract of sale under the circumstances stated in the bill, was in contravention of the provisions of the act of 1821, c. 66, commonly called the champerty act, which declares that no person shall agree to buy, or to bargain or sell any pretended right or title to any lands or tenements, or any interest therein, and if any such agreement &c., be made, where the seller has not himself, or by his agent or tenant, or his ancestor, been in actual possession of the same or of the reversion or remainder, or taken the rents and profits for one whole year, next, before the sale, such sale &c. shall be utterly void. That this statute extends to a case where the owner may be in possession at the time a power to sell is given, and where the contract of sale under the power takes place after adverse possession held for a year, is settled by the decision of this court in the case of Whitesides vs. Martin, reported in 7th Yerg. 384. Upon this ground we think the decree of the chancellor must be reversed. The only doubt felt by the member of the court who pens this opinion, is, that as we all think the case made out in the bill, answers and proofs, would have authorised a decree in favor of the executor, to recover the possession for the purpose of executing the power, either under his own responsibility, or the superintendance of the court, whether as there is a prayer for general relief, a decree in his favor should not now be given to that extent. But as that general prayer is not perhaps consistent with the prayer for specific relief; as the purpose ; nd frame of the bill is for a specific" execution of the contract with McDermott, and more especially as the *305 devisees of Andrew Henderson, are riot now before the court, we concur in dismissing the bill, but without prejudice to the right of the executor, to file another bill for the purpose of recovering the possession, and executing the power. The defendant, N. S. Peck, will recover for himself and wife, no costs in this court, or the court below, and the complainant, Jos. R< Henderson as executor, will pay the balance of the costs, except the costs of Jacob J. M. Peck in this court, who as the bill against him was disnrssed in the chancery court, had no cause to come into this court.
Decree reversed.*